UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: 09-CV-3313-SRN-SER

| | |
|---|---|
| Pradip Gupta,<br><br>    Plaintiff,<br><br>v.<br><br>Arrow Financial Services, L.L.C.,<br>Gurstel, Staloch & Chargo, P.A.,<br>and Jane Doe,<br><br>    Defendants. | **MEMORANDUM OF LAW IN<br>SUPPORT OF PLAINTIFF'S MOTION<br>FOR ATTORNEY'S FEES AND COSTS** |

## INTRODUCTION

This memorandum is submitted in support of Plaintiff's Motion for Attorney's Fees and Costs pursuant to Rule 54.3 of the Local Rules of the United States District Court for the District of Minnesota, Plaintiff's acceptance of the terms within Defendants' Rule 68 Offer of Judgment, and 15 U.S.C. § 1692k(a).[1] Since the parties have not come to an agreement on the amount necessary to compensate Plaintiff for reasonable attorney's fees and costs, Plaintiff now seeks a determination by the Court.

## FACTS

On November 20, 2009, Plaintiff filed the present case against Defendants alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). *(Doc. No. 1.)* In his Complaint, Plaintiff sought $1,000 in statutory damages,

---

[1] Plaintiff accepted an Offer of Judgment on January 15, 2011, and requested pursuant to Local Rules that the Court issue a briefing schedule with sufficient time for the parties to attempt to resolve the fees and costs issue, until February 15, 2011. *(See Doc. 38 and 38-1.)* Thereafter, the Clerk of Court contacted the undersigned counsel and advised him that the Court would not issue a scheduling order for briefing this matter and that a non-dispositive hearing date should be obtained from the Court's calendar clerk.

actual damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k for Defendants' illegal collection conduct toward Plaintiff, a victim of identity theft. *(Doc. No. 1.)*

Defendants answered Plaintiff's Complaint jointly on December 11, 2009, but filed two separate Answers. *(Doc. Nos. 2 & 3.)* In their Answers, Defendants' asserted several defenses and vigorously denied liability and most of the allegations in Plaintiff's Complaint. *(Doc. Nos. 2 & 3.)*

Leading up to the Pretrial Conference, Plaintiff tried to engage in settlement talks with Defendants and even offered to accept $7,500 in early January 2010. However, Defendants refused to make an offer and were unwilling to engage in mediation.[2] As a result, the case did not settle at that time. *(Doc. No. 9.)*

On July 31, 2010, Plaintiff served separate discovery requests upon each Defendant. *(Doc. No. 14.)* After Plaintiff granted a two-week extension of time to respond, Defendant Gurstel, Staloch & Chargo, P.A. (hereafter "GSC"), served executed responses on or about September 14, 2010, which were accompanied by, and inexplicably interwoven with, <u>unexecuted</u> responses from Defendant Arrow Financial Services, L.L.C. (hereafter "Arrow"). *(Doc. No. 14, Ex. A.)* The responses, however, contained boilerplate objections, provided little to no information whatsoever, and very little in the way of requested documents were produced. *(Doc. No. 13.)* Moreover, Defendants denied many of Plaintiff's Requests for Admission, but failed to explain the

---

[2] The undersigned counsel advised the Court of these facts and the $7,500 demand in his in-camera settlement letter to the Hon. Judge Susan Richard Nelson on January 25, 2010.

basis for the denials as required under the Rules and ignored the special interrogatory with each set of discovery. *(Doc. No. 13.)*

On October 26, 2010, Plaintiff sent Defendant's counsel a letter in accordance with Local Rule 37.1 in an effort to resolve any outstanding discovery issues in connection with its insufficient responses. *(Doc. No. 14, Ex. B.)* The letter requested that the parties meet and confer at 3:00 p.m. on October 26, 2010, in an effort to discuss the Defendants' serious discovery deficiencies and avoid the necessity of the instant motion practice. Defendants' counsel responded to Plaintiff's letter by email indicating that the date and time were inconvenient, but requested to meet on the following day at 3:00 p.m. *(Doc. No. 14, Ex. C.)* Plaintiff's counsel then scheduled a teleconference on his calendar for 3:00 p.m. on October 27, 2010, and sent an email to Defendants' counsel confirming the date and time. *(Doc. No. 14, Ex. D.)*

In response to moving the discovery conference to a more convenient time for Defendants' counsel, Defendants failed to appear as scheduled anyway. Moreover, Defendants failed to supplement or amend their responses, and again failed to produce any documents or withdraw their groundless objections. *(Doc. No. 13.)* Instead, less than three minutes before the start of the agreed-upon Local Rule 37.1 conference, Defendants' counsel sent an emailed letter demanding that Plaintiff provide a more "fulsome" explanation of what discovery was being requested. *(Doc. No. 14, Ex. E.)*

As a result, Plaintiff brought a Motion to Compel Discovery that was heard by Honorable Judge Susan Richard Nelson on December 1, 2010. *(Doc. No. 19.)* On December 6, 2010, Hon. Judge Nelson granted Plaintiff's Motion to Compel almost

entirely, ordering that Defendants "serve complete and separate responses to the following discovery requests, together with documents sought therein, <u>no later than December 15, 2010.</u>" *(Doc. No. 20 (underline in original).)*

On December 15, 2010, in response to Judge Nelson's Order, Defendant GSC's counsel faxed and emailed a partial document of incomplete, evasive, and non-responsive discovery responses rather than comply with the Order.[3]  Furthermore, the responses did not comply with Hon. Judge Nelson's Order.  Plaintiff's attorney did receive other documents from Defendant GSC's attorney in the mail on December 24, 2010--nine days after the ordered deadline--but which utterly and totally failed to delineate to which request(s) the documents were responsive. *(Doc. No. 29.)*

Defendants then separately filed untimely appeals to Hon. Judge Nelson's Order on December 21, 2010. *(Doc. Nos. 22 & 25.)* On January 5, 2011, Hon. Judge Richard H. Kyle denied Defendants' appeals and reaffirmed Hon. Judge Nelson's Order less than three hours after Plaintiff had filed his response. *(Doc. No. 35.)* One week later, on January 12, 2011, Defendants sent 1,141 pages of supplemental discovery responses to Plaintiff's attorney.  A cover letter was attached to the discovery documents which stated in relevant part as follows:

> **Yesterday, I scheduled a Motion for Summary Judgment for March 8, 2011.** On behalf of Arrow Financial Services LLC, I intend to argue: 1) that Arrow had no obligation to send any notices

---

[3] Also, despite being delivered by two separate methods, fax and email, each document was mysteriously cut-off—leaving off a large part of Defendant Arrow's required responses, its signature block, or a certificate of service. Despite repeated inquiries regarding this fact, Defendants' counsel has never proffered any explanation for how this document was truncated—or why Defendant Arrow never complied with the Court's Order to sign its discovery responses.  At oral argument on December 1, 2010, the Court admonished Defendants' counsel when it was argued that the lack of executed discovery was merely an administrative oversight.

required by the FDCPA to the Plaintiff because Arrow never had any communications with the Plaintiff; and 2) Arrow Financial Services LLC, as a purely passive debt buyer, is not responsible under a theory of respondent superior. Yes, I know you and I already had a discussion on this latter point, but neither one of us was persuaded by the others' arguments. **I'm happy for the opportunity to have this issue finally decided in this district.**

*(Barry Decl. ¶ 50, Ex. 6 [Bold emphasis added].)*   The undersigned counsel was frankly stunned by these statements, given that he had repeatedly attempted to get hearing dates on the calendar to ask that the Court take additional action and/or grant additional relief to the Plaintiff because of the Defendants' disobedience of the Court's order of December 6, 2010.   *(Doc. No. 20.)*   All of those requests for hearing dates, formal and informal, were denied by the Court because of the understandable transitional period between reassignment of the Magistrates and the District Court Judges on this case. Later, when this counsel spoke with Hon. Judge Nelson's chambers following receipt of this above-referenced letter, he was advised that no such date had ever been obtained by Defendants and no such request had ever been made.   Moreover, no Notice of Motion was ever filed on the PACER docket.   The Chambers' staff was as puzzled as this counsel by the affirmative representation that such a hearing date had been secured—when it had not. [4]

---

[4] At oral argument on December 1, 2010, Hon. Judge Nelson asked Defendants' counsel to explain her reference in her response to a "protective order" that had already been issued in the Minnesota state court matter between Plaintiff and Defendants.   Defendants' brief stated in relevant part as follows:

Despite the fact that Defendants produced a proposed protective order and stipulation to Plaintiff, and **the State Court ordered entry of a Protective and Confidentiality Order**, Plaintiff has done nothing to advance the entry of a Protective Order and production of the documents they seek other than to complain that a protective order is not necessary.

*(Doc. 16, p. 8, bold emphasis added.)*   Defendants' counsel admitted that there was no such order and simply stated that she was mistaken.   In fact, there was no such state court action between Plaintiff and these Defendants, much less any protective order.   Plaintiff was needlessly forced to defend against this statement at oral argument.

Moreover, in complete defiance of the Magistrate's Order of December 6, 2011, and a week after the Court's denial of Defendant's Appeal of that Order, Defendants' Counsel went on to write:

> There is a significant issue of cost that we need to address. As you may know, Arrow Financial Services LLC is a nationwide company with business activity in many states. Arrow has, in the past, initiated state court actions against debtors. As a result, Arrow is not infrequently named as a defendant in FDCPA cases, almost all of which lack merit. Nevertheless, this fact remains. Thus, the number of pages of documents that are responsive to your request for production of documents no.5 runs well into the thousands. **Before inspection of these documents occurs, Arrow seeks assurances from Plaintiff that Plaintiff will make arrangements for the copying of such documents as well as the cost of such copying.** Also, due to the confidential data maintained at Arrow's office, it is most likely that your inspection of documents will have to occur at another location.
>
> Arrow's position is that there is nothing about these documents that are relevant to the Plaintiffs allegations that it did not send certain required notices to Plaintiff and is liable, under a theory of respondent[sic] superior for the conduct of Gurstel Chargo. Therefore, in the unlikely event that Plaintiff prevails, Arrow will energetically oppose any request for attorney's fees and costs as unreasonable. And in the event that Arrow prevails, it will seek its fees and costs pursuant to 15 U.S.C. §1692(k)(a) (3). Accordingly, I request that you consider whether the significant costs in reviewing and copying these documents is a burden you want to expend in this litigation, especially since it is absolutely unnecessary.
>
> Finally, in order to narrow the issues involved and reduce the costs of litigation for both sides, Arrow is willing to stipulate, for this litigation only, that it did not send any notice to the debtor and is liable under a theory of respondent[sic] superior for the conduct of Gurstel Chargo. In considering this offer, please consider that this agreement does not reduce the amount of Plaintiff's potential recovery. This offer is open until 5:00 p.m. central time, on January 19, 2011.

*(Id. [Bold emphasis added].)*   This is a prime example of Defendants' continued obstruction of the discovery process that both prolonged and complicated this relatively

straightforward case involving an identity theft victim. Defendants engaged in this further disregard of the Court's discovery order in the absence of an assigned Magistrate Judge who could effectively address these abuses, and against a looming discovery deadline of February 1, 2011. The attachments to the letter comprised nearly 1,200 pages of incomplete, redacted, unlabeled, and unsworn discovery responses from Defendants. Defendants' partial and objectionable production occurred nearly a month after Hon. Judge Nelson's December 15, 2010 deadline for compliance and a week after Plaintiff had attempted to get a calendar date from the Court for an Order to Show Cause hearing.

Moreover, Defendant Arrow now sought to predicate production of these documents upon Plaintiff paying costs and moving the location of the documents. No such argument about costs or location had been made either in Defendants' responsive papers or argument on the Motion to Compel, or in the Defendants' failed Appeal of the Magistrate's Order of December 6, 2010. Defendants were ordered to comply with those discovery requests, both by Hon. Judge Nelson and later by Hon. Judge Kyle, and yet they persisted in refusing to promptly and properly produce the discovery so ordered. These and the other discovery stalling tactics engaged in by Defendants forced Plaintiff to do substantial amounts of work over the holidays in an effort to bring Defendants to heel the Court's Order. Substantial time was spent working on briefing both for an Order to Show Cause hearing and/or a Motion for Default Sanctions for failure to comply with the Court's Order of December 6, 2010.[5]  Finally, it should be noted that Defendant

---

[5] While these motions were never filed, they were fully briefed by Plaintiff's counsel. They were not filed only because Plaintiff was unable to obtain a hearing date from the Court, despite efforts both with the Chief Magistrate Judge's chambers and the Hon. Judge Nelson's Chambers. The obvious logistical reason was that the Court was in

Arrow never complied with the Court's Order of December 6, 2010 because it never produced signed responses to discovery and never produced any documents.

After all of this, Defendants then served a Rule 68 Offer of Judgment to Plaintiff on January 14, 2011. ***After more than a year of protracted litigation, Defendants finally offered to pay $7,500 damages plus all reasonable attorney's fees and costs incurred in this case—the same amount demanded by the Plaintiff a year earlier.*** Pursuant to the Rule 68 Offer of Judgment, Plaintiff's attorney's fees and costs were to be determined by the Court in the event that the parties could not come to an agreement. *(Doc. No. 38.)* On January 15, 2011, Plaintiff accepted Defendants' Rule 68 Offer and Judgment and also provided a Notice of Intent to Claim Attorney's Fees and Costs Pursuant to 15 U.S.C. § 1692k(a). *(Doc. No. 38.)* The clerk entered a judgment in favor of Plaintiff on February 11, 2011. *(Doc. No. 39.)*

To date, the parties have been unable to agree upon the amount of attorney's fees and Plaintiff now seeks the Court's determination.

## ARGUMENT

I.   **PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES UNDER THE TERMS OF DEFENDANTS' RULE 68 OFFER OF JUDGMENT AND THE FAIR DEBT COLLECTION PRACTICES ACT.**

Attorney's fees and costs in this case are mandated both by Defendants' Rule 68 Offer of Judgment and the FDCPA. Defendants' Rule 68 Offer of Judgment reads in relevant part:

---

the middle of reassigning cases during the transitional period following Your Honor's ascension to the bench, and Hon. Judge Nelson's ascension to the District Court bench.

> The judgment entered shall include an additional amount for Plaintiff's reasonable attorney fees and costs. Said amount for attorney fees and costs shall be determined either by agreement of the parties or, if such agreement is not successful, by the Court upon application by Plaintiff's counsel, subject to objection and response by Defendants.

Accordingly, Plaintiff is entitled to reasonable attorney's fees and costs as expressly agreed to by Defendants in their Offer of Judgment. Since the parties have been unable to agree upon attorney's fees and costs, Plaintiff now brings this Motion seeking the Court's determination.

Likewise, the fee-shifting provision of the FDCPA provides for the mandatory award of attorney's fees and costs. The fee-shifting provision states in relevant part:

> (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
> . . .
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a). Awards of attorney's fees and costs are thus mandatory under the FDCPA, not special or discretionary. *See Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (affirming that "the Act mandates an award of attorney fees"). As such, the mandatory award of attorney's fees included in the FDCPA plays an integral part in "fulfilling Congress' intent that the Act should be enforced by debtors acting as private attorneys general." *See Zagorski v. Midwest Billing Svcs, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997); *see also Armstrong v. Rose Law Firm, P.A.*, civ. no. 00-2287, 2002 WL 31050583 *1 (D. Minn. 2002) (*citing Graziano*, 950 F2d at 113).

Here, where Plaintiff has brought a successful action against Defendants, Plaintiff is entitled to reasonable attorney's fees and costs as determined by this Court.  Without a doubt, Plaintiff has been fully successful having demanded $7,500 in early January 2010, only to be forced to litigate for over a year until Defendants could ultimately and finally meet that offer of $7,500 a year later.

**II.   AS THE PREVAILING PARTY, PLAINTIFF IS ENTITLED TO FULL ATTORNEY'S FEES BECAUSE HIS ATTORNEY'S TIME WAS REASONABLY EXPENDED AND THE ATTORNEY'S HOURLY RATE IS REASONABLE.**

The lodestar method, wherein the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is used to determine what amount a prevailing party should be awarded for attorney's fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Armstrong v. Rose Law Firm, P.A.*, *supra*, (applying the Lodestar method in an FDCPA action). This requires the Court to consider 1) the plaintiff's overall success; 2) the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and 3) the efficiency with which the plaintiff's attorney conducted that activity. *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997).

Factors that may be considered in calculating the lodestar include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the

amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430, n.3.

However, "[t]he most critical factor is the degree of success obtained." *Id.* at 436; *Zagorski*, 128 F.3d at 116; *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995.) A plaintiff may be considered a "prevailing party" for attorney fees purposes if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Hensley*, 461 U.S. at 424. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435.

Furthermore, in an FDCPA lawsuit, unlike in other tort lawsuits, it is important to consider that the plaintiff is seeking to vindicate important rights that go beyond mere monetary value. *Tolentino*, 477 U.S. at 651-52 (*quoting City of Riverside v. Rivera*, 477 U.S. 561 (1986)); *see also, e.g., Wal-Mart Stores, Inc., v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (finding "damages awards do not reflect fully the public benefit advanced."). Thus, seemingly low monetary recoveries in an FDCPA case often signify excellent results because important rights as a consumer have been vindicated.

In this case, where Plaintiff accepted an offer for $7,500 in resolution of his FDCPA claims, Plaintiff's attorney achieved a complete victory. Not only was Plaintiff's rights as a consumer upheld, but $7,500 was paid by the Defendants who were accountable for violating these rights. An award of $7,500 and the satisfaction of justice signify an excellent result in this case. Moreover, this is the same $7,500 demand which

had been made more than a year before and had been ignored by Defendants.  As such,

Plaintiff's attorney is entitled to be compensated fully for the fees and costs he incurred

in this matter.

In an FDCPA case that the undersigned counsel litigated in this District a decade

ago, Hon. Judge Nelson succinctly framed and brilliantly analyzed the very issues this

Court now faces:

> Finally, Defendant asserts that Plaintiffs attorney spent an
> unreasonably large amount of time performing certain tasks in
> connection with the present suit.
>
> Plaintiff responds that Defendant caused the protracted litigation in
> the present suit. She states that Defendant made much of the
> discovery and briefing in this case necessary by pursuing the
> ultimately unsuccessful defense that the obligations arising from a
> worthless check do not constitute a debt under the FDCPA.
>
> Plaintiff also argues that given the simplicity of the case, Defendant
> should have made an Offer of Judgment under Fed. R. Civ. P. 68, to
> limit the amount of litigation necessary.
>
> The Court finds that Plaintiff's attorney spent a reasonable amount of
> time working on the present case. Nothing in the record indicates
> that Plaintiffs attorney pursued unreasonably time consuming
> strategies. The Court recognizes that Defendant was free to pursue
> its theory of defense and incorporate it into a motion for summary
> judgment. But the result of Defendant's strategy was further
> litigation. And because its theory failed, Defendant is now obligated
> to pay the fees Plaintiff incurred while her attorney was responding
> to this defense. See McGowan v. King, Inc., 661 F.2d 48, 51 (5th Cir.
> 1981).
> …
>
> Defendant argues that awarding Plaintiff the full amount of fees and
> requests she seeks would amount to a windfall. It stresses that the
> statutory damages totaled only $1,000, but that Plaintiffs attorney
> states the total fees and costs in connection with the suit total more
> than $40,000.

The Court finds that Plaintiffs attorneys' fees and costs are reasonably proportional. While they far exceed the statutory damage award in the present case, Plaintiff did not choose to create this disparity. Defendant aggressively defended this case, as was its right. It developed the theory that tendering a worthless check is a crime, and consequently, the obligations arising from that check do not constitute a "debt" under the FDCPA[.]  This defense produced a large amount of litigation, and significantly increased the number of hours Plaintiff's attorney committed to this case. Ultimately, Judge Davis rejected Defendant's theory based on Eighth Circuit precedent.

The FDCPA contains a fee shifting statute to ensure that meritorious parties such as Plaintiff can attract competent legal representation. In the present case, Plaintiff's attorney achieved success on the statutory damages claim. In addition, her attorney's time sheets do not indicate that he expended wasteful amounts of time, or money during the course of representation. Therefore, the Court will award the full amount requested.

*Armstrong v. Rose Law Firm, P.A.* (USDC D.Minn. Case 0:00-cv-02287-MJD-SRN, Order, Sept. 4, 2002).

The instant case is in many ways factually indistinguishable from *Armstrong*: Litigious Defendants, who refuse to acknowledge clear liability under the FDCPA, who vigorously defend the case, and who refuse to produce legitimate discovery responses. When faced with the possibility of a motion to amend for punitive damages[6] and an

---

[6] At 4:29 p.m. on January 13, 2011, Plaintiff received information from the Minnesota Department of Commerce regarding the debt collector employed by Defendants who communicated with and allegedly verbally abused the Plaintiff in the course of collecting this debt.  The Department's debt collection application materials—which were completed and signed by this individual—clearly showed that she had repeatedly and falsely stated under oath that she had no criminal history.  Defendants' employee/agent had operated as a licensed debt collector previously in Minnesota.

In fact, a cursory review of the Minnesota Court System Criminal Convictions database showed that this individual had convictions for charges of false information to police, obstructing legal process, giving a false name to police, theft, and participation in a disorderly house, amongst others.  Defendants knew or should have known from this publically available data that their employee/agent was unfit to collect debts.  This Commerce license application information was shown to Defendants' counsel on a laptop at a face-to-face meeting with Defendants' counsels on the early afternoon of January 14, 2011, and provided as a discovery supplementation immediately thereafter.

Order to Show Cause for disobedience of the Court's Order of December 6, 2010, these Defendants finally relented and offered to pay Plaintiff the very same $7,500 that he had demanded more than a year earlier—long before even the initial pretrial conference had been held.

### a. Plaintiff's attorney expended a reasonable number of hours toward the resolution of this case.

The Court must first determine whether the amount of time Plaintiff's counsel spent on this case was reasonable given the results obtained and the difficulty of obtaining those results. Ultimately, the determination of the reasonable number of hours expended rests in the sound discretion of the trial court, which must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

Here, Plaintiff's attorney obtained an excellent result for his client and worked towards a resolution of the case in the absence of any offer to settle it. Defendants never made an offer to settle this case until more than a year of protracted litigation and never made an Offer of Judgment until January 14, 2011.[7] In fact, the first offer of any kind in the case came less than three hours before the Offer of Judgment had been served.

In addition, Defendants were informed that Plaintiff had been the victim of identity theft, and the debt they were attempting to collect did not belong to Plaintiff. Had Defendants conducted a more thorough investigation into this matter, they would

---

[7] Defendants' counsel claimed in an email on December 17, 2010 to have made a Rule 68 Offer of Judgment in this case sometime previously. No such offer is in this counsel's files. No such offer was ever filed with the Court. When pressed on the issue, no copy of any previous offer of judgment was forthcoming from Defendants nor has a certificate of service by mail been produced. Again, this appears to be yet another mistake by Defendants' counsel. *(Barry Decl.. ¶4, Ex. 3.)*

have discovered that there was in fact a criminal investigation taking place which led to the arrest and conviction of the individual who stole Plaintiff's identity. *(Barry Decl. ¶ 49, Ex. 5, Victim Impact Statement).* Defendants' reasonable investigation into Plaintiff's legitimate claim that he was a victim of identity theft would have prevented this lawsuit.

However, Defendants refused to believe that Plaintiff did not owe this debt and instead put forth a rather stalwart, albeit, reckless defense to this litigation. From the start, Defendants each filed an Answer, denying almost every allegation and asserting six separate defenses. Before the pretrial conference, Plaintiff was actively engaged in trying to settle the case and even offered to accept $7,500—the amount of damages for which the case ultimately settled. Defendants refused to make an offer at the outset and instead choose the frustration of discovery as their defense. This forced Plaintiff into a myriad of motion practice in an effort to get basic discovery responses to which it was entitled.

Defendants forced Plaintiff's attorney to spend a significant amount of time engaged in discovery because Defendants were absolutely uncooperative. The attorney's fees and costs continued to mount as Plaintiff was compelled to draft and submit discovery requests, and also respond to Defendants' discovery requests. Then, as a result of Defendants' complete lack of a response to Plaintiff's requests, and after failing to show up for a scheduled Local Rule 37.1 teleconference, Plaintiff was forced to bring a Motion to Compel that included extensive research and a 46-page memorandum of law. This involved a significant amount of time as it led to thorough preparation for a motion hearing where Judge Nelson granted Plaintiff's Motion almost entirely. Not even the Court's Order could ultimately force Defendants to comply.

After the Court-ordered deadline, Defendants faxed and emailed documents to Plaintiff's attorney which were incomplete, evasive, and non-responsive. Moreover, Defendants failed to delineate to which request the documents were responsive, forcing Plaintiff's attorney to spend several hours sorting through numerous documents to make that determination. On top of that, Defendants then filed an untimely and baseless appeal of Judge Nelson's Order to which Plaintiff's attorney had to file a memorandum in response. Defendants' appeal was denied shortly thereafter. Then, Defendants sent 1,141 pages of supplemental discovery responses to Plaintiff's attorney.

Finally, after Plaintiff's attorney had spent hours looking through Defendants' 1,141 pages of discovery responses, Defendants made an offer that Plaintiff accepted. But, never once did Defendants make a reasonable offer before this, waiting almost one year and two months into litigation. Rather, Defendants forced this litigation to continue and, in doing so, forced Plaintiff's attorney to incur unnecessary and unreasonable fees and costs trying to get Defendants to comply with this Court's Orders.

Plaintiff's attorney has produced time records which detail the extensive work and amount of time put forth in this case. *(Barry Decl. ¶ 11, Ex. 2.)* Attorney's fees incurred while drafting this motion and putting together a fee spreadsheet are properly included in the lodestar figure, as "compensation for time necessarily spent in preparing a fee petition is appropriate in cases where attorney's fees are authorized by statute." *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1314 (8th Cir. 1981). Here, Plaintiff's attorney should be compensated for preparing this fee petition because attorney's fees are authorized by the FDCPA and Plaintiff completely prevailed in this action.

In addition, common sense and experience lends support to the simple notion that when a defendant fights hard in a consumer action, and thereby creates additional work, larger fees will be incurred just as in any other type of action. *See Armstrong, supra* (finding Defendant in a FDCPA case was obligated to pay Plaintiff $43,180 in attorney's fees and $1,475 in costs after it chose to pursue its theory of defense); *Sonmore v. Checkrite, et al*, Civ. No. 99-2039 DDA/FLN (D.Minn.1999) (awarding Plaintiff $82,000 for attorneys' fees and $16,326.97 for costs, a total of $98,326, in a FDCPA case); *Tolentino*, 46 F.3d at 652-653 (finding attorney fee award of only $10,132.50 under FDCPA based on hourly rates lower than attorneys' normal rates of $275 per hour and $225 per hour was abuse of discretion, even though debtor had no actual damages and $1,000 in statutory damages). Here, where Defendants did not cooperate in settlement negotiations or discovery, litigation dragged on and Plaintiff's attorney incurred greater fees and costs because of it.

In sum, Plaintiff's attorney expended a great deal of effort on this case, accumulating significant fees and costs because of Defendants' tactics and utter refusal to cooperate. And despite Defendants' actions, Plaintiff's attorney was able to vindicate Plaintiff's rights and obtain an excellent result. Therefore, all factors considered, the Court should find that Plaintiff's attorney expended a reasonable number of hours on this case.

**b. The hourly rate charged by Plaintiff's attorney is reasonable.**

The Court's next inquiry is whether Plaintiff's attorney's hourly rate is reasonable. In making this determination, a court should consider the prevailing market rate for

similar services in the community for work performed by "lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458-59 (8th Cir. 1998).

Here, Plaintiff was represented by a highly experienced, nationally renowned, and highly reputable attorney in the area of FDCPA litigation.   Plaintiff requests that this Court approve the hourly rate of his attorney. Attorney Peter Barry has an extensive background as a consumer rights attorney, which includes successful jury verdicts and settlements for thousands of FDCPA claims in Minnesota and nationwide on behalf of individual and class consumers. *(Barry Decl. ¶ 7.)*  Furthermore, Mr. Barry is recognized as a national expert in FDCPA litigation having been featured on collection abuse news stories for every major television network as well as the New York Times, Wall Street Journal, and the Washington Post, amongst others. *(Barry Decl. ¶ 24.)* Mr. Barry has also trained more than 450 attorneys from 47 states throughout the country in an intensive 27-hour FDCPA litigation seminar. *(Barry Decl. ¶ 29.)* Mr. Barry has taught Federal Consumer Law Litigation at William Mitchell College of Law, Saint Paul, Minnesota, since 2003. *(Barry Decl. ¶ 26.)*

In November 2010, Mr. Barry developed, organized and taught an extensive two-day litigation seminar in a mock courtroom setup in San Juan, Puerto Rico for the National Association of Consumer Bankruptcy Attorneys. *(Barry Decl. ¶ 32.)* The litigation presentation included using numerous live witnesses, oral arguments, discovery motions, trial practice, video depositions, and a presiding judge before an audience of several hundred bankruptcy practitioners. *(Barry Decl. ¶ 32.)* Most recently, Mr. Barry

trained several hundred new consumer lawyers at conferences in Seattle and San Francisco over three days, in January 2011 and March 2011. *(Barry Decl. ¶ 31.)* Mr. Barry also actively participates in the Federal Bar Association, has volunteered as a 4th District Investigator in Hennepin County since 2006, and volunteers for the Federal Pro Se Project where he has plied his significant litigation skills. *(Barry Decl. ¶¶ 33, 34.)* In addition, Mr. Barry annually addresses the Minnesota State Bar's Creditor Debtor Section on FDCPA and collection abuse issues. *(Barry Decl. ¶ 35.)*

In January 2009, Mr. Barry appeared as a featured speaker at the American Bar Association's Committee on Consumer Financial Services Meeting in Scottsdale, Arizona, speaking on FDCPA compliance issues. *(Barry Decl. ¶ 36.)* The group consisted of approximately 500 in-house and general counsels for industry participants. *(Barry Decl. ¶ 36.)*

In March 2010, Mr. Barry was a featured speaker before several hundred collection agency executives and general counsels throughout the United States, in a 2-hour teleconference with the American Collectors Association ("ACA") to discuss the CARD Act Amendments. *(Barry Decl. ¶ 37.)* He was the first Plaintiff's attorney to ever be asked to participate in such a conference in the ACA's history. *(Barry Decl. ¶ 37.)* The ACA represents more than 125,000 debt collectors in the United States. *(Barry Decl. ¶ 37.)* To avoid potential conflicts and maintain independence from the collection industry, Mr. Barry directed the ACA to donate its honorarium to the Union Gospel Mission. *(Barry Decl. ¶ 37.)*

Mr. Barry also speaks nationally on FDCPA issues and regularly volunteers as a featured speaker at the North American Collection Agency Regulators Association Meetings. *(Barry Decl. ¶ 38.)* Most recently, Mr. Barry has been asked to appear as a featured speaker at the Cleveland Bar Association's William O'Neil Bankruptcy Institute in May 2011. *(Barry Decl. ¶ 39.)*

As Mr. Barry's knowledge and experience have increased over the years, so too have his rates. In 2002, this District Court approved him at an hourly rate of $250. *(Barry Decl. ¶ 18.)* In 2005, the United States Federal District Court, for the Eastern District of Pennsylvania approved him at $300. *(Barry Decl. ¶ 18.)* In July 2009, this District Court approved him at an hourly rate of $350. *(Barry Decl. ¶ 18.)* Despite six fewer years of experience, this Court recently approved another FDCPA attorney in Minneapolis, trained by Mr. Barry, at the rate of $350 per hour. *(Barry Decl. ¶ 48; see Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, Civ. No. 10-2113 (D. Minn. March 1, 2011), Doc. 36, p. 5.) Accordingly, Mr. Barry's reasonable current hourly rate is $425 per hour.

Mr. Barry's hourly rate is also consistent with attorney-fee awards in this district for lead attorneys in similar types of cases. *See Gorton v. Debt Equities, LLC*, Civ. No. 08-4817, Doc. No. 26 (D. Minn. July 13, 2009) (finding rates of $350 per hour for first chair in an FDCPA case reasonable); *Hixon v. City of Golden Valley*, Civ. No. 06-1548, Doc. No. 170 (D. Minn. December 13, 2007) (finding a rate of $400 per hour reasonable and consistent with prevailing market rates); *Peterson v. Ford Motor Co.*, Civ. No. 03-5027, 2006 WL 3030885, *2-*3 (D. Minn. Oct. 11, 2006) (approving hourly rates of

$350 in MHRA case). Mr. Barry's comparable, and in some cases, exceeding experience in FDCPA litigation justifies his hourly rate.

Recently, this District Court's Honorable Magistrate Judge Jeffrey J Keyes, while awarding attorney's fees in an FDCPA case, reflected on the skill required in litigating consumer cases in federal court. Honorable Magistrate Judge Jeffrey J. Keyes stated in pertinent part:

> The Court also notes that the skill-set that must be brought to bear by the litigation counsel in a consumer-protection case in federal court is comparable to that of any attorney who must litigate a complex federal statutory scheme through the federal court system, whether the federal case involves employment statutes, civil rights law, or the myriad other federal statutes that provide damage remedies. There is a level of skill required in litigating cases in federal court that has to be taken into account in determining the fee award.

*Phenow*, Civ. No. 10-2113 (D. Minn. March 1, 2011), *supra*.

Ultimately, Mr. Barry practices regularly before this District, and he has the requisite level of skill, experience, and reputation to justify the hourly rate requested in this case.

### c. Proportionality is not a factor to be considered.

Plaintiff anticipates that Defendants may erroneously argue that the size of Plaintiff's recovery should be considered in determining a reasonable attorney fee award. This should not be a factor at all, however, as the amount of attorney's fees awarded is not required to be proportionate to the amount of damages recovered. *See Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) (acknowledging that "proportionality between the amount of damages and fee awards was not required"). To the contrary, a court may

abuse its discretion by applying proportionality to an attorney fee award. *See Jordan v. Transnational Motors*, Inc., 537 N.W.2d 471 (Mich. Ct. App. 1995).

The U.S. Supreme Court has previously considered the question of proportionality in attorney fee awards and rejected the proposition that "fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). The Supreme Court went on to reason that:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting section 1988.

*Id.* Similarly, in the context of the Fair Credit Reporting Act (FCRA), the Fourth Circuit held:

> Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987).

The proportionality argument was also rejected in this district in an FDCPA case, *Armstrong v. Rose Law Firm, P.A.*, *supra*, where the defendant contended that awarding the plaintiff $40,000 in fees would create a windfall since the Plaintiff's damages totaled only $1,000. The court found that the plaintiff did not choose to create the disparity, and although the defendant had a right to aggressively defend the case, doing so caused a

large amount of litigation and greatly increased the number of hours the plaintiff's attorney had to expend. *Id*.; *see also Bankey v. Phillips & Burns, LLC*, Civ. No. 07-2200, 2008 WL 2405773, *1, *6 (D. Minn. June 11, 2008) (awarding $28,770.50 in attorney fees and $4,859.90 in costs after plaintiff accepted an offer of judgment of $2,500 for an FDCPA violation); *see also Phenow*, Civ. No. 10-2113 (D. Minn. March 1, 2011), *supra* (awarding $10,714.00 in attorney fees and $412.70 in costs after plaintiff accepted an offer of judgment for $1,000 after an FDCPA violation).

Accordingly, this Court should not consider proportionality, but rather Congress' intent in creating the fee-shifting provision of the FDCPA and the goals sought to be achieved in regards to consumer protection. By aggressively pursuing their defense like the defendant in *Armstrong*, Defendants, not Plaintiff, created any disparity between the judgment amount and the fees and costs actually incurred by Plaintiff. Since Plaintiff prevailed on his claim, and the lodestar is an accurate representation of hours expended in his case, this Court should award the full amount of attorney's fees requested.

## **CONCLUSION**

Based upon the foregoing facts, law and arguments of counsel, Plaintiff Pradip Gupta respectfully requests that this Court GRANT his Motion for Attorney's Fees and Costs and ORDER that Defendants pay Plaintiff's reasonable attorney's fees in the amount of $50,830.00 and costs in the amount of $513.15, for a total award of $51,343.15. Further, Plaintiff requests that this Court grant any such further relief as it deems just and equitable.

Respectfully submitted,

**BARRY & SLADE, LLC**

Dated: March 25, 2011

By:  **s/Peter F. Barry**
Peter F. Barry, Esq.
Attorney I.D.#0266577
2021 East Hennepin Avenue, Suite 195
Minneapolis, Minnesota 55413-1773
Telephone:  (612) 379-8800
Facsimile: (612) 379-8810
pbarry@lawpoint.com

pfb/ra                                     **Attorney for Plaintiff**