**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Pradip Gupta,                                             **Civil File No.: 09-cv-3313 SRN/SER**

      Plaintiff,

v.                                                        **REPORT AND RECOMMENDATION**

Arrow Financial Services, LLC,
Gurstel, Staloch & Chargo, P.A.,
and Jane Doe,

      Defendants.

---

    Peter F. Barry, Barry & Slade, LLC, 2021 East Hennepin Avenue, Suite 195, Minneapolis, Minnesota 55413, on behalf of Plaintiff.

    Bridget A. Sullivan and Michael D. Johnson, Gurstel, Staloch & Chargo, P.A., 6681 Country Club Drive, Golden Valley, Minnesota 55427, on behalf of Defendants.

---

STEVEN E. RAU, United States Magistrate Judge

    The above captioned case comes before the undersigned United States Magistrate Judge on Plaintiff's Motion for Attorney's Fees and Costs [Doc No. 40]. This matter has been referred to the undersigned for the resolution of pretrial matters pursuant to 28 U.S.C. § 636 (b) (1) (A) and District of Minnesota Local Rule 72.1.

    **I.**    **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Pradip Gupta ("Gupta") filed his Complaint against Arrow Financial Services, LLC, Gurstel, Staloch & Chargo, P.A., and Jane Doe (collectively "Defendants") on November 20, 2009, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, ("FDCPA") (Compl. at 12) [Doc. No. 1]. Gupta was the victim of identity theft in 2006. *Id*. at 3, ¶ 12. The Minneapolis Police Department subsequently arrested a female suspect for

1

fraudulently using Gupta's checks.[1]   *Id*. at 3, ¶ 13.  Gupta asserted that he never opened the Washington Mutual Bank account that Defendants attempted to collect on in June 2009.  *Id*. at 3, ¶ 10.  On June 26, 2009, one of Gurstel, Staloch & Chargo, P.A.'s ("GSC") debt collectors telephoned Gupta regarding the fraudulent Washington Mutual account.  Gupta alleged that GSC's collector used a rude tone, falsely accused Gupta of failing to pay his debts, and threatened to put a lien on his home.  *Id*. at 4-6.

GSC sent Gupta a collection letter on June 29, 2009, which included a fraud questionnaire.  *Id*. at 6.  Gupta declined to provide personal information such as his social security number and driver's license number in the GSC questionnaire because he believed that doing so would require him to falsely admit ownership over the disputed account.  *Id*. at 8, ¶ 14.  GSC sent Gupta a second letter on July 2, 2009, requesting the information again and asking that Gupta provide Defendants with his attorney's contact information.  *Id*. at 9.  Gupta further asserted that these incidents caused him emotional distress and violated the FDCPA.  *Id*. at 5, 10.  Gupta requested statutory damages of $1,000 under the FDCPA, actual damages, and reasonable attorney's fees and costs.  *Id*. at 11, ¶ 62; 12.

Defendants GSC and Arrow Financial Services, LLC ("Arrow Financial") answered separately, denying liability and most of the allegations in the Complaint [Doc. Nos. 2, 3].  In early January 2010, Gupta made Defendants a verbal settlement offer of $7,500. (Pl.'s Mem. at 2) [Doc. No. 42].  Defendants rejected Gupta's settlement offer.  (Defs.' Mem. at 4) [Doc. No. 45].  The case ultimately settled for $7,500 in February 2011 [Doc. No. 39].

---

[1] Gupta's Complaint states that after the individual making fraudulent use of his checks was arrested, Gupta "closed his Wells Fargo bank account and reopened it with a new account number." *Id*. at 3, ¶ 14.  The Court is not entirely clear as to whether the individual who fraudulently opened the Washington Mutual Bank account was identified or prosecuted.

After the case did not settle in early 2010, discovery ensued. In October 2010, Gupta filed a Motion to Compel Discovery Responses, which then-Magistrate Judge Susan Richard Nelson granted in December 2010 [Doc. Nos. 11, 20]. Defendants immediately appealed Judge Nelson's Order, which Judge Kyle affirmed in its entirety on January 5, 2011 [Doc. Nos. 22, 25, 35]. Gupta filed notice of his acceptance of Defendants' settlement offer on January 15, 2011 [Doc. No. 38]. Judgment in favor of Gupta was entered on February 11, 2011. On March 25, 2011, Attorney Peter F. Barry ("Mr. Barry") filed the instant Motion for Attorney's Fees and Costs pursuant to 15 U.S.C. § 1692k(a). Mr. Barry requests $50,830 in attorney's fees and $513.15 in costs. *Id.*

## II.   DISCUSSION

### a. Standard of Review

The FDCPA allows a successful litigant to collect "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k (a) (3). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see Groton v. Debt Equities, LLC*, No. 08-4817, Doc. No. 26 (D. Minn. Jul. 13, 2009) (citing *Blum* factors to determine reasonableness of requested FDCPA attorney's fees). The lodestar method is the "most useful starting point for determining the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This method requires a court to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*; *see Simpson v. Merchs. & Planters Bank*, 441 F.3d

572, 580 (8th Cir. 2006) (following *Hensley* approach to determining appropriate amount of attorney's fees).

The reasonableness of a fee depends on the following factors: "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." *Jenkins v. Mo.*, 127 F.3d 709, 718 (8th Cir. 1997). Courts must also consider the market rate for similar services in the community where the litigation takes place performed by a "lawyer of reasonably comparable skill, experience, and reputation." *McDonald v. Armentrout*, 860 F.2d 1456, 1458-59 (8th Cir. 1988).

### b. Appropriate Hourly Rate

Gupta's attorney, Mr. Barry, seeks a rate of $425 per hour. (Pl.'s Mem. at 20). In *Groton v. Debt Equities, LLC*, No. 08-4817, Doc. No. 26, at 5 (D. Minn. Jul. 13, 2009), Mr. Barry also sought an hourly rate of $425 per hour in a FDCPA case before Magistrate Judge Jeffrey J. Keyes. In *Groton*, Magistrate Judge Keyes concluded that Mr. Barry's hourly rate for purposes of his FDCPA fee application was $350. *Id*. In declining to award Mr. Barry an hourly rate of $425, Judge Keyes noted that Mr. Barry "submitted no affidavits or other support from other lawyers in the community who have comparable levels of skill and experience verifying that $425 is the prevailing rate." *Id*. at 5. Instead, Mr. Barry provided the Court with a survey of hourly billing rates prepared by a lawyer in Dayton, Ohio, and several recent fee petition orders from Mr. Barry's recent cases in other jurisdictions. *Id*. at 6. The Court gave "no weight" to the survey and emphasized that "[t]here is not even any proof that any attorneys from Minnesota were surveyed at all." *Id*. at 9. Magistrate Judge Keyes also rejected Mr. Barry's contention that

the Court should apply the Laffey Matrix and found cases from the United States District Court for the District of Arizona unpersuasive. *Id*. at 6, n.3; 7, n.4.

Magistrate Judge Keyes provided Mr. Barry with a roadmap for future fee petitions before this Court, which Mr. Barry did not follow. *See Groton,* 08-4817, Doc. No. 26, at 5, 9. In the instant Motion, Mr. Barry failed to provide a single affidavit of a Minnesota attorney supporting his rate of $425 per hour. He did, however, include over 10 pages of newspaper articles on his FDCPA boot camp workshops [Doc. 43-4], and over three pages detailing his recent professional accomplishments. (Defs.' Mem. at 18-21). Though such information demonstrates Mr. Barry's notoriety and expertise, these publications are not as compelling as would be affidavits from fellow Minnesota attorneys as Magistrate Judge Keyes requested in 2009. *Groton*, 08-4817, Doc. No. 26, at 5, 9.

In the absence of affidavits in support of Mr. Barry's hourly rate, this Court will turn to recent comparable attorney's fees petitions in this District. Defendants assert that Mr. Barry's reasonable hourly rate should be $350. (Defs.' Mem. at 22). This District approved Mr. Barry at a rate of $350 per hour in July 2009. *Groton*, 08-4817, Doc. No. 26, at 9. Now, 20 months later, Mr. Barry requests an hourly rate of $425, which is approximately 18% higher than the rate at which he was approved in 2009. The Court identified only one similar fee petition case, *Hixon v. City of Golden Valley*, No. 06-1548, 2007 WL 4373111, at *2 (D. Minn. Dec. 13. 2007), where the Court found an hourly rate of $400 to be reasonable. In *Hixon*, however, Judge Kyle noted that the defendants did not challenge the $400 per hour rate asserted by an "experienced" lead attorney and the $300 per hour rate asserted by primary co-counsel. *Id*. Other similar cases in this District have found an hourly rate of $350 to be reasonable for a lead attorney in a FDCPA or a MHRA case. *See Phenow v. Johnson et al*, No. 10-2113, 2011 WL 710490, at *1 (D. Minn.

Mar. 1. 2011) (approving $350 hourly rate for "leading member of the consumer-protection bar"); *Peterson v. Ford Motor Co.*, No. 03-5027, 2006 WL 3030885, at *2-3 (D. Minn. Oct. 11, 2006) (awarding $350 hourly rate for lead attorney in MHRA case).

At oral argument, Mr. Barry provided the Court with *Wiley v. A&K Auto Sales et al*, Civ. No. 06-4611 [Doc. No. 64] (DWF/AJB) (D. Minn. Mar. 5, 2010) and represented that Judge Donovan W. Frank approved his petition for an hourly rate of $400. This assertion mischaracterizes Judge Frank's order. Judge Frank approved an hourly rate "ranging from $350 per hour for work performed in 2007 through 2008 to $400 per hour for work performed thereafter.[2]" *Id*. The Court ultimately reduced Mr. Barry's fee requested amount of $31,867 by approximately 62% to $12,000 based on the Court's review of the time reports. *Id*. at 2, 6. Based on the foregoing, Mr. Barry's appropriate hourly rate in this case is $350 per hour. Case law in this District does not support an hourly rate as high as $425 in FDCPA cases, yet a rate of $350 is a baseline rate for Mr. Barry. Though Mr. Barry's affidavit in support of his motion demonstrates that he has increased his experience and expertise, previous decisions in this District support an hourly rate of $350 in the absence of affidavits supporting a higher hourly rate. *See Groton*, No. 08-4817, at 9 (concluding that "the hourly rate which should be utilized for Mr. Barry's Fee application is $350 per hour).

   c. **Hours Expended**

The Court carefully reviewed the time records to determine whether a reasonable amount of time was spent on pursuing this case based on the lodestar method. See *Hensley*, 461 U.S. at 433; *Simpson*, 441 F.3d at 580. The Court notes that Mr. Barry expended a considerable amount of time in this case as a result of discovery disputes with Defendants. Mr. Barry was duty bound

---

[2] The Court did, however, state that "the hourly rate charged by Plaintiffs' counsel, while on the high side, is reasonable in light of Plaintiff's attorney's experience and practice in the area of consumer rights law. *Id*. at 4.

to zealously advocate for his client's interest. *Phenow*, 2011 WL 710490 at *6. In particular, Mr. Barry was required to spend a significant amount of time on the motion to compel including researching the law, brief writing, and arguing in court. Significantly, Gupta's motion to compel was successful and was affirmed on appeal.

In reviewing Mr. Barry's time records, however, the Court has determined that some of the time was unreasonable. *See Phenow*, 2011 WL 710490 at *3. Defendants do not dispute 52.2 hours of time entries, nor do they dispute Gupta's costs of $513.15. (Sullivan Decl. Ex. P at 29). The Court separates Mr. Barry's unreasonable time entries into two categories: 1) entries that should be disallowed because they are duplicative or involve non-legal ministerial tasks and 2) unnecessary or excessive time entries that should be reduced. The Court has identified 27 time entries in the first category for a reduction of 4.0 hours.[3] The Court has identified 32 time entries

---

[3] The Court summaries below the time entries it recommends be disallowed. (Sullivan Decl. Ex. P) [Doc. No. 47-6, at 12-27].

| **Date** | **Task Description** | **Disallowed Time** |
|---|---|---|
| 09/01/09 | Drafted notes after reviewing client documents | 0.4 |
| 11/24/09 | Reviewed affidavit of service | 0.2 |
| 12/27/09 | Email regarding out of office reply | 0.1 |
| 01/04/10 | Email confirming Rule 26(f) Report receipt | 0.1 |
| 01/05/10 (3 entries) | Scheduling emails | 0.3 |
| 01/25/11 (2 entries) | Emails acknowledging receipt of settlement letter | 0.3 |
| 07/31/10 (3 entries) | Emails regarding courtesy copies of documents and cover letter drafting; Assembled discovery requests | 0.7 |
| 09/14/10 (2 entries) | Emails regarding attached documents | 0.2 |
| 10/15/10 | Email providing MS Word versions of discovery documents | 0.1 |
| 10/26/10 | Research regarding punitive damages | 0.4 |
| 10/27/10 | Email providing document to Mr. Barry | 0.1 |
| 11/18/10 | Email confirming discovery conference date | 0.1 |
| 12/24/10 | Email regarding out of office reply | 0.1 |
| 12/27/10 | Email regarding courtesy copies of deposition notice | 0.1 |
| 01/05/11 (2 entries) | Emails regarding scheduling | 0.2 |
| 01/07/11 | Email providing courtesy copy of document | 0.1 |
| 01/14/11 (3 entries) | Emails regarding phone call request and Rule 68 offer | 0.3 |
| 02/11/11 | Email receipt of CM/ECF notice | 0.1 |
| 03/14/11 | Email regarding out of office reply | 0.1 |
| | **Total Hours Reduced** | **4.0** |

7

in the second category that it recommends for a reduction of 15 hours.[4] Based on the Court's own experience and its review of the work performed in the case, the court recommends that Mr. Barry's request of 119.6 hours be reduced by 19.0 hours to 100.6 hours, which is a 26% total reduction. In sum, the fee portion of Mr. Barry's award is recommended to be $35,210 based on an hourly rate of $350.

### d. Proportionality

Defendants argue that proportionality prevents Gupta from receiving attorney's fees in excess of $18,375 based on the $7,500 settlement. (Sullivan Decl. Ex. P. at 29). When Congress establishes a statutory scheme that provides for statutory damages and fee shifting, however, "the amount of attorney fees need not be proportionate to the amount of damages recovered." *Phenow*, 2011 WL 710490 at *3. *See Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) (holding "proportionality between the amount of damages and fee awards was not required").

---

[4] The Court recommends partial reduction of the following time entries. (Sullivan Decl. Ex. P).

| **Date (s)** | **Description** | **Billed Time** | **Hours Reduced** | **Revised Time** |
|---|---|---|---|---|
| 12/11/09 (5 entries) | Reviewed pleadings and disclosures | 1.4 | 0.7 | 0.7 |
| 09/14/10 & 09/27/10 | Receipt of mail from Defendants | 0.4 | 0.2 | 0.2 |
| 10/30/10 | Drafted hearing notice, certificate of service, and proposed order | 2.2 | 1.1 | 1.1 |
| 10/30/10 | Drafted memorandum in support of motion to compel | 9.8 | 4.4 | 4.5 |
| 11/23/10 (1 entry) & 11/24/10 (3 entries) | Provided courtesy copies and drafted cover letter | 0.6 | 0.3 | 0.3 |
| 12/15/10 (5 entries) | Emails and faxes regarding discovery responses | 1.1 | 0.6 | 0.5 |
| 12/24/10 (2 entries) | Drafted deposition notices | 0.5 | 0.3 | 0.2 |
| 01/07/11 (3 entries) | Drafted amended deposition notices | 0.6 | 0.3 | 0.3 |
| 01/07/11 (2 entries) | Drafted cover letter and subpoena | 0.7 | 0.4 | 0.3 |
| 01/11/11 (3 entries) | Drafted default judgment motion; received mail from defendants | 7.7 | 3.2 | 4.5 |
| 01/12/11 (3 entries) | Emails regarding case reassignment notice and drafted correspondence | 0.6 | 0.3 | 0.3 |
| 03/24/11 | Drafted and finalized fee petition, memorandum, and moving papers | 11.2 | 3.2 | 8.0 |
| | **Total Hours** | 36.8 | **15.0** | 20.9 |

As is the case with civil rights statutes, consumer protection statutes such as the FDCPA are designed to make it financially feasible for consumers to prosecute violations. *Phenow*, 2011 WL 710490 at *3. Fee shifting, therefore, incentivizes defendants to refrain from violating consumers' rights. *Id*.

The United States Supreme Court explicitly held that attorney's fee awards need not be proportionate with the plaintiff's damages. *City of Riverside v. Riviera*, 477 U.S. 561, 574 (1986). The Supreme Court reasoned that: "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious claims but relatively small potential damages to obtain redress from the courts." *Id*. Similarly, the Fourth Circuit in a Fair Credit Reporting Act (FCRA) case held that because extensive damages were "rarely" awarded, "requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act." *Yohay v. City of Alexandria Emps. Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987).

Courts in this District generally reject proportionality arguments in FDCPA cases. In *Armstrong v. Rose Law Firm, P.A.*, No. 00-2287, 2002 WL 31050583, at *5 (D. Minn. Sept. 5, 2002), then-Magistrate Judge Susan Richard Nelson awarded a FDCPA plaintiff over $40,000 in attorney's fees even though the plaintiff's damages totaled only $1,000. Judge Nelson reasoned that the defendant's aggressive defense of the case "significantly increased the number of hours Plaintiff's attorney committed to this case." *Id*. Similarly, in *Bankey v. Phillips & Burns*, LLC, No. 07-2200, 2008 WL 2405773, at *1, *6 (D. Minn. Jun. 11, 2008), Judge Frank awarded a FDCPA plaintiff over $28,000 in attorney's fees and nearly $5,000 in costs after the plaintiff accepted an offer of judgment of $2,500. The fee award in *Armstrong* was more than 40 times greater than the plaintiff's recovery and the *Bankey* fee award was approximately 13 times

9

greater than the settlement amount.  *See* 2002 WL 31050583, at *5; 2008 WL 2405773, at *6. Here, the Court recommends a fee award approximately 5 times greater than the settlement amount.  The Court's recommended fee award is therefore reasonable and adequately proportional to similar fee petitions in this District.

### e. Personally Identifiable Information

At oral argument, Gupta identified several documents Defendants included in their affidavits in support of their Memorandum in opposition to this Motion that contain personally identifiable information that should have been redacted to protect Gupta's identity.  Specifically, Gupta objected to the public filing of: 1) Gupta's victim impact statement containing his pin number and victim identification number (Sullivan Decl. Ex. J at 2-6) [Doc. No. 47-4 at 2-6]; 2) documents containing full account numbers (Sullivan Decl. Ex. E at 56; Ex. K at 7) [Doc. No. 47-1, at 56; 47-4 at 7]; (Johnson Decl. Ex. A at 3) [Doc. No. 46-1, at 3]; and 3) 16 pages of Washington Mutual statements with full account numbers (Sullivan Decl. Ex. M at 16-31) [Doc. No. 47-4 at 16-31].

Fed. R. Civ. P. 5.2(a) provides that social security numbers, taxpayer identification numbers, birth dates, the names of minors, and financial account numbers must be redacted from electronic filings.  *See* Local Rules 5.1, 5.5; *see also CM/ECF User's Manual – Civil*, U.S. District Court of Minnesota, at 66-68 (Dec. 2009) available at http://www.mnd.uscourts.gov/cmecf/guides/091229-Civil_Users_Manual.pdf (last accessed Apr. 25, 2011).  The Court reviewed all the documents Defendants submitted in opposition to Gupta's Motion and will address each objection individually.

10

Contrary to Gupta's assertion at oral argument, in civil cases, addresses are not considered personally identifiable information that must be redacted.[5] Such information is readily ascertainable from the Registry of Deeds. Gupta contends that the Fridley address listed in the documents is an investment property and therefore this information should be redacted out of a concern for his privacy. This argument is unfounded because, like Gupta's current home address, this information is publicly available.

With respect to the Washington Mutual Bank account number, the inclusion of this information, though concerning to the court, is not sanctionable because this account is not live and was never valid. (Sullivan Decl. Ex. M at 16-31). The Court is uncertain, however, as to whether the First National Bank account number that Defendants failed to redact is or was ever a live account. (Sullivan Decl. Ex. K at 7). Out of an abundance of caution, the Court recommends that Defendants redact and re-file any document filed on ECF containing these account numbers in full.[6]

Defendants' inclusion of several documents from the U.S. Probation Office containing Gupta's victim identification number and pin is most troubling. (Sullivan Decl. Ex. J at 2-6). Not only did Gupta file redacted versions of this document, which should have alerted the Defendants to the sensitivity of the information, but the disclosure of such information is particularly objectionable given that Gupta was the victim of identity theft. Accordingly, Defendants should redact and re-submit this exhibit.[7]

---

[5] The CM-ECF Guide for the United States District Court for the District of Minnesota states that documents must be redacted or sealed in accordance with Fed. R. Civ. P. 5.2 and Fed. R. Crim. P. 49.1. *Id*. at 67. With respect to addresses, the Guide specifically states: "Home addresses need to be redacted to city and state **in criminal cases only**." (emphasis added).

[6] Defendants should follow the redaction procedures in the CM-ECF Guide. *See supra* note 2 at 67-68.

[7] Defendants' violation of the Fed. R. Civ. P. and the local rules is not sufficiently severe in comparison to cases in this District that warranted sanctions. *Cf. Allstate Ins. Co. v. Linea Latina de Accidentes, Inc.*, No. 09-3681, 2010 WL 5014386, *1-2 (D. Minn. Nov. 24, 2010) (ordering attorney who filed documents unredacted containing individuals' financial account numbers, birth dates, the name of a minor, and at least one social security number to

11

### III. RECOMMENDATION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Attorney's Fees and Costs [Doc No. 40] be **GRANTED in part** and **DENIED in part**. The Court recommends that:

1. Defendants pay Gupta's attorney's fees in the amount of $35,210.00 plus costs of $513.15, for a total of **$35,723.15**;

2. Defendants be ordered to redact and re-file all documents containing personal identifiers including Sullivan Declaration Exhibits E, J, K, and M and Johnson Declaration Exhibit A within **5 days** of the date upon which Judge Susan Richard Nelson adopts this Report and Recommendation.

Dated: April 29, 2011

                                                  s/ Steven E. Rau
                                                STEVEN E. RAU
                                                United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 13, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

---

pay a monetary sanction of $300 and pay for credit monitoring for the affected individuals); *Engeseth v. Isanti Cnty.*, 665 F. Supp. 2d 1047, 1048-49 (D. Minn. 2009) (sanctioning attorney $5,000 for disclosing the full social security numbers and birth dates of 179 individuals and requiring attorney to provide credit monitoring for all affected individuals). Defendants' counsel is, however, strongly encouraged to carefully review the rules regarding the filing of personally identifiable information on CM-ECF.